**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

HIGHLINE SPIRITS COMPANY, LLC          Case No. 1:25-cv-266

       Plaintiff,

v.                                                             Honorable Paul L. Maloney

 VOSA SPIRITS, LLC, and
 UNCOMMON CANNING, LLC,

       Defendants,

and

 UNCOMMON CANNING, LLC,

       Cross-Plaintiff

v.

VOSA SPIRITS, LLC,

       Cross-Defendant.

_____/

**DEFENDANT/CROSS-DEFENDANT VOSA SPIRITS, LLC'S
ANSWER TO DEFENDANT/CROSS-PLAINTIFF UNCOMMON
CANNING, LLC'S CROSS-CLAIM**

Defendant/Cross-Defendant VOSA SPIRITS, LLC ("**Vosa**"), by and through its

undersigned attorneys, hereby answers the allegations in the Cross-Claim filed by

Defendant/Cross-Plaintiff UNCOMMON CANNING, LLC ("**Proper**"), as follows:

1.     This action was commenced by Plaintiff Highline Spirits Company, LLC

("Highline") against Proper and Vosa for alleged trademark infringement, among other related

claims, related to Vosa's use of "High Line" on its on its products, which are alcoholic seltzer

beverages.

**Answer:        Admit**

2.        Pursuant to its Complaint, Highline is seeking, among other relief, injunctive relief and monetary damages.

**Answer:        Admit**

3.        Proper is a beverage production and packaging company, with its principal place of business in Hudsonville, Michigan.

**Answer:        Upon information and belief, admit**

4.        Generally speaking, Proper provides services, labor, and equipment for the production, bottling/canning, and packaging of beverages on behalf of customers, who market, sell, and distribute the beverages (often through the use of distributors).

**Answer:        Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

5.        Depending on the contractual arrangement, Proper's customers provide the ingredients, specifications, and packaging (pre-labeled) to Proper, who in turn makes the beverage, cans/bottles it, and returns it to the customer or, potentially, their distributor of choice.

**Answer:        Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

6.        In the fall of 2022, Proper and Vosa entered into a Co-Manufacturing Master Services Agreement ("MSA 1").  See Exhibit A.

{03700368 1 }

**Answer:**    **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

7.      Pursuant to MSA 1, it was agreed that Vosa was "in the business of marketing, selling, and distributing beverages and wishe[d] to engage Proper to labor and equipment for the purpose of processing, bottling/canning, and packaging beverages for Buyer." *Id.* (Recitals).

**Answer:**    **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

8.      Pursuant to MSA 1, Vosa was to furnish Proper with specifications, all ingredients, pre-labeled cans, pre-labeled cartons, and pre-labeled trays. *Id.* at l(a), Schedule 2.

**Answer:**    **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

9.      Pursuant to MSA 1, Vosa "retain[ed] ownership of and all rights in and to the Finish Product Branding and to any goodwill accruing to the Product Intellectual Property or Information." *Id.* at 4(d). "Finished Product Branding," in turn, includes "trademarks, trade names, trade dress, symbols, slogans, logos, designs, copyrights, images, drawings, labels, artwork, marketing and advertising materials, and similar intellectual property (whether or not registered) used in connection with the manufacturing, labeling, or marketing of the Finished Products." *Id.* at 4(a).

{03700368 1 }

**Answer:** **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

10.    Pursuant to MSA 1, it was agreed that Proper would help Vosa assist in the protection or enforcement of any Finished Product Branding, and would "join [Vosa] in any legal action at the expense of Buyer." *Id.* at 4(d).

**Answer:** **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

11.    Pursuant to MSA 1, Vosa represented that its instructions and Buyer Materials would be "free from defects in workmanship, materials, and design." *Id.* at 7(b).

**Answer:** **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

12.    Pursuant to MSA 1, Vosa agreed to indemnify, defend, and hold Proper harmless from any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fins, costs, or expenses of whatever kind, including actual attorney's fees, relating to/arising out of or resulting from any claim of a third party arising out of or occurring in connection with Vosa's products, Vosa's obligations under the Agreement, or Vosa'a negligence, willful misconduct, or breach of the Agreement.

**Answer:** **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

4

13.    Proper began producing Vosa's 'High Line' liquid beverage in March of 2023, while MSA 1 was in effect.  Its production was limited to taking Vosa's specifications, ingredients, and Buyer's Materials, including pre-labeled packaging, to produce and can the *beverage,* and send the canned beverage onto Vosa or, potentially,  its distributor.

**Answer:**    **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

14.    Proper did not design, create, or print any "High Line" marks.

**Answer:**    **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

15.    In January of 2024, Proper and Vosa entered into a Master Service Agreement for Annual Contract ("MSA 2").  See Exhibit B.

**Answer:**    **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

16.    The contractual arrangement between the parties remained the same: Proper was to provide services, labor, and equipment for the canning and packaging of Vosa's beverage. Vosa would furnish the specifications, ingredients, packaging, and would sell and distribute the products.

**Answer:**    **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

{03700368 1 }

17.     Pursuant to MSA 2, Vosa again represented that its Buyer Materials would be free from defects in workmanship, materials, and design. *Id.* at 7.1.

**Answer:     Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

18.     Pursuant to MSA 2, Vosa still retained all ownership rights in the Finished Product Branding. *Id.* at 12.2.

**Answer:     Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

19.     Pursuant to MSA 2, Vosa agreed to indemnify, defend, and hold Proper harmless from any and all losses, damages, liabilities, deficiencies, claims, actions, judgments settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind incurred by Proper relating to or arising out of Vosa's breach of a representation or warranty, or Vosa's negligent (or more culpable) act or omission. *Id.* at 10.1.

**Answer:     Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

20.     Proper continued producing Vosa's High Line beverage in 2024.

**Answer:     Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

{03700368 1 }

21.     Proper was never notified of any alleged trademark infringement until being served with this lawsuit.

**Answer:       Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

22.     Vosa was put on notice of the alleged infringement on, at the latest, May 2, 2024. It did not inform Proper of the allegations and, in fact, placed more orders for High Line beverage production and packaging.

**Answer:       Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

23.     Pursuant to its Complaint, Highline alleges Vosa's actions were knowing, intentionally, and willful.

**Answer:       Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

24.     Proper has appeared and defended Highline's Complaint, denying liability.

**Answer:       Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

25.     Proper now wishes to bring a cross-claim for indemnification and breach of contract.

{03700368 1 }

**Answer:**     **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

26.     This cross-claim arises out of the transaction or occurrence that is the subject of Highline's Complaint, it falls within this Court's ancillary or supplemental jurisdiction. *Coleman v. Casey Cty Bd of Ed,* 686 F.2d 428,430 (6th Cir. 1982); 28 U.S.C. § 1367.

**Answer:**     **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

**COUNT I**
**CONTRACTUAL INDEMNIFICATION**

27.     Proper incorporates the preceding paragraphs as though fully set forth herein.

**Answer:**     **Vosa incorporates its prior responses.**

28.     Pursuant to MSA l, Vosa agreed to indemnify, defend, and hold Proper harmless against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including attorney fees, relating to/arising out of or resulting from any claim of a third party arising out of or occurring in connection with the finished products; Vosa's obligations under the MSA; or Vosa's negligence, willfull misconduct, or breach of the MSA.

**Answer:**     **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

29.     Pursuant to MSA 2, agreed to indemnify, defend, and hold Proper harmless from any and all losses, damages, liabilities, deficiencies, claims, actions, judgments

8

settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind incurred by

Proper relating to or arising out of Vosa's breach of a representation or warranty, or Vosa's

negligent (or more culpable) act or omission.

**Answer:**        **Vosa neither admits nor denies the allegations as it lacks knowledge**

**and information sufficient to determine the truth of the allegations and therefore leaves**

**Proper to its proofs.**

30.    Pursuant to MSA 1, Vosa agreed that Proper would join any lawsuit related

to Vosa's branding "at the expense of" Vosa.

**Answer:**        **Vosa neither admits nor denies the allegations as it lacks knowledge**

**and information sufficient to determine the truth of the allegations and therefore leaves**

**Proper to its proofs.**

31.    Pursuant to the MSAs, Vosa represented that its Buyer Materials (including

the packaging it provided to Proper) were free from defects in materials and design.

**Answer:**        **Vosa neither admits nor denies the allegations as it lacks knowledge**

**and information sufficient to determine the truth of the allegations and therefore leaves**

**Proper to its proofs.**

32.    Highline's claims arise out of and relate to Vosa's Finished Products.

**Answer:**        **Vosa neither admits nor denies the allegations as it lacks knowledge**

**and information sufficient to determine the truth of the allegations and therefore leaves**

**Proper to its proofs.**

33.    Highline alleges that Vosa acted knowingly, intentionally, and willfully.

{03700368 1 }

**Answer:**    **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

34.    Vosa is contractually obligated to indemnify Proper for all loses, damages, liabilities, and claims under the MSAs, including attorney fees.

**Answer:**    **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

35.    Vosa has refused to indemnify Proper to date.

**Answer:**    **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

## COUNT II
## COMMON LAW INDEMNITY

36.    Proper incorporates the preceding paragraphs as though fully set forth herein.

**Answer:**    **Vosa incorporates its prior responses.**

37.    Under Michigan law, "where the wrongful act of one results in another being held liable, the latter party is entitled to restitution from the wrongdoer." *Pontious v. Bliss,* 102 Mich. App. 718,721 (1981).

**Answer:**    **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

38.    Vosa created and designed the mark in question and provided Proper with the packaging bearing the mark in question.

{03700368 1 }

**Answer:** **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

39.    Proper is only getting sued by Highline because of the actions of Vosa.

**Answer:** **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

40.    To the extent Highline is entitled to damages from Proper (which Proper fervently denies), it would only be based upon the (alleged) "wrongful act[s]" of Vosa, thereby entitling Proper to indemnification. *Pontious,* 102 Mich App at 721.

**Answer:** **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

**COUNT III**
**BREACH OF CONTRACT**

41.    Proper incorporates the preceding paragraphs as though fully set forth herein.

**Answer:** **Vosa incorporates its prior responses.**

42.    Pursuant to the MSAs, Vosa agreed to provide buyer materials (including the packaging it provided to Proper) were free from defects in materials and design.

**Answer:** **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

43.    Highline alleges the Buyer Materials were not free from defect in material or design.

11

{03700368 1 }

**Answer:** **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

44.    If this is the case, Vosa breached its contractual obligation to Proper, thereby damaging Proper.

**Answer:** **Vosa neither admits nor denies the allegations as it lacks knowledge and information sufficient to determine the truth of the allegations and therefore leaves Proper to its proofs.**

Respectfully submitted,

MIKA MEYERS PLC
Attorneys for Vosa Spirits, LLC

Dated:  9/16/2025                By:  /s/ Daniel J. Broxup
                                     Daniel J. Broxup (P72868)
                                     900 Monroe Avenue, NW
                                     Grand Rapids, MI 49503
                                     (616) 632-8000

{03700368 1 }